Lester Earl PYLE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-80-87.

Court of Criminal Appeals of Oklahoma.

April 22, 1982.

Rehearing Denied May 19, 1982.

Joel W. Barr, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Rozia Marie McKinney, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

CORNISH, Judge:

Lester Earl Pyle was tried for Rape in the First Degree in Case No. CRF-79-96 in the District Court of Cleveland County. The jury returned a verdict of guilty and set punishment at five (5) years imprisonment.

On February 11, 1979, at approximately 3:00 a. m., Ms. D. and her date were returning to Oklahoma City from a party in Norman. Ms. D. was driving the car. She pulled over to the side of the road. There was ice in the area where she stopped and the car became stuck. When her date got out of the car he fell and broke his ankle. Ms. D. then left the vehicle to seek help. As she walked down the street, the appellant stopped his truck and asked her if she needed help. She asked him to take her to a telephone. However, when she got in the truck the appellant took her to a deserted area north of Thunderbird Lake. He forced her at knifepoint to undress and then he raped her twice.

At approximately 7:00 a. m., the same day, the appellant took Ms. D. home and told her that if she told anyone what happened, he would hurt her children. During the time that the appellant was with Ms. D., he told her his name and where he worked.

The victim, reported the crime at about 3:00 p. m. February 11, and supplied officials with a description of the appellant, his truck and the name he had given her. She was taken to Norman Municipal Hospital at approximately 6:15 p. m. and Dr. Shelton conducted a rape examination.

## I

■ The appellant argues that the trial court committed error when it allowed the State to introduce evidence obtained by searching the body of the defendant. He first insists that the affidavit for the search warrant issued to conduct the body search was inadequate on its face because it did not meet the requirement set out in *Cole v. Parr*, 595 P.2d 1349 (Okl.Cr.1979). In *Cole*, the State sought a court order to compel the defendant to submit to the removal of blood, saliva, hair, and seminal fluid samples. In *Cole* this Court asserted that "it is improper procedure to require an accused to provide physical samples for testing by the State prior to the State's testing of speciments from the body of the victim and the scene of the crime." *Supra* at 1351. This Court concluded that the issue is whether:

"The State has presented sufficient evidence of the probative value of such tests in the prosecution of the case. If the State can show the probative value of the requested tests at an evidentiary hearing, then the defendant may be subject to submitting to the extractions in a reasonable manner, of similar samples from his own body."

This case is readily distinguishable from *Cole*. At bar, the State obtained a search warrant to obtain hair samples, blood samples and saliva from the appellant. The affidavit articulated sufficient underlying facts to establish probable cause to believe that the appellant had committed the crime.

The affidavit also provided the magistrate with probable cause to believe that the evidence requested to be seized would be probative in the prosecution of the case. See *Bollinger v. State*, 556 P.2d 1035 (Okl.Cr. 1976). We find that the search of the appellant's body pursuant to the valid search warrant was reasonable. The State did not violate the appellant's Fourth Amendment right to be free from unreasonable search and seizures. See *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We hold that the rule in *Cole* was sufficiently followed.

## II

■ The defendant next asserts that the in-court identification of the defendant by the victim was tainted by improper pre-trial identification procedures and should have been suppressed. The defendant contends that the assistant district attorney tainted all pre-trial identification procedures by showing the victim a picture of the appellant prior to the preliminary hearing. We disagree.

First, we find that the pre-trial identification procedures were not overly suggestive. Two days after the alleged rape the victim was taken to the police station and shown a photographic lineup. The photographic lineup consisted of one hundred and nine-two (192) photographs. The victim identified the appellant. This identification procedure was not likely to result in a misidentification. See *Hicks v. State*, 583 P.2d 1117 (Okl.Cr.1978).

Second, we find that the in-court identification of the appellant was independently reliable. *McDaniel v. State*, 576 P.2d 307 (Okl.Cr.1978). The victim spent approximately three (3) hours in the presence of the appellant, and he apparently made no attempt to conceal his identity. Ms. D. identified the appellant from picture line-up two days after the offense. There was a discrepancy between her initial description regarding height and weight, however, she had a limited opportunity to observe the defendant in a standing position. At no time did she fail to identify the appellant.

Further, the victim testified that her identification of the defendant in court was based on her observance during the offense. The above facts indicate that the in-court identification was based on an independently reliable source of identification, which was properly admitted for the jury's consideration. See *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

### III

The appellant complains that the trial court admitted testimony that was incompetent, irrelevant and immaterial. No authority is cited to support this proposition. Therefore, this Court will only review this assignment of error to determine whether the appellant was deprived of any fundamental rights. *Dick v. State*, 596 P.2d 1265 (Okl.Cr.1979). After a thorough review of the record, we find that the evidence complained of was relevant and was sufficiently connected to the defendant and the crime. See *McKee v. State*, 576 P.2d 302 (Okl.Cr. 1978).

AFFIRMED.

BRETT, P. J., specially concurs in results.

BUSSEY, J., concurs.

BRETT, Presiding Judge, specially concurring in results:

In *Cole v. Parr*, 595 P.2d 1349 (Okl.Cr. 1979), this Court considered the balance to be struck between the State's need to analyze speciments from those accused of criminal conduct and the Fourth Amendment's protection of personal privacy and dignity against unwarranted intrusion by the State. We held that justice could best be served if the State was first required to obtain and analyze samples taken from the body of the victim and the scene of the crime. After this is accomplished, the State must demonstrate to a magistrate at an evidentiary hearing that probable cause exists to believe that there is a rational connection joining the samples within the possession of the State and the specimens sought of the defendant. Only then did we consider probable cause to be sufficiently established to override the Fourth Amendment's protections.

In the instant case the State failed to meet the guidelines established in *Cole*. The decision of *Cole v. Parr*, supra, however, was not rendered until after the specimens of this defendant had been seized and the appellant failed to come to this Court seeking a writ of prohibition against the State's procedure as did the defendant Cole. In light of this and the other overwhelming evidence against the appellant, I concur in the majority's decision not to reverse on this basis but dissent to the abandonment of this Court's unanimous holding in *Cole v. Parr*, supra.